DEAN E. PAULCHECK,          )
                                  )

          Plaintiff,        )     No. 10 C 04226
                                  )

    v.                        )
                                  )     Judge Edmond E. Chang

UNION PACIFIC RAILROAD    )
COMPANY,                      )
                                  )

          Defendant.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Dean Paulcheck alleges that his employer, Defendant Union Pacific Railroad Company, discriminated against him in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*[1] Specifically, Paulcheck claims that Union Pacific did not promote him because he was over forty years old. Union Pacific moves for summary judgment. R. 68. For the following reasons, Union Pacific's motion is granted.

## I.

In deciding the summary judgment motion, the Court views the evidence in the light most favorable to Paulcheck. Paulcheck began his career at Union Pacific in 1978. R. 70, Def.'s Stmt. of Facts (DSOF) ¶ 3. After working as a locomotive engineer for almost thirty years, Paulcheck applied to Union Pacific's Operations Management Training Program. *Id.* ¶¶ 3, 9. The Training Program is a mixture of classroom and field training that prepares Union Pacific employees for managerial positions in the

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

company's operating department. *Id.* ¶¶ 4, 8, 14. The Training Program accepts applications from all three of Union Pacific's regions. *Id.* ¶ 5. Paulcheck applied for the Training Program through Union Pacific's Northern Region. *Id.* ¶ 9. If a Northern Region employee is accepted into the Training Program and successfully completes the Program, he is placed in a vacant Manager of Yard Operations ("Yard Manager") position. *Id.* ¶ 25. However, there is not always a vacant Yard Manager position immediately available for every trainee who completes the Training Program. *Id.* ¶¶ 28, 29. In those cases, the employee continues to work as a trainee until a Yard Manager position opens up, or if the situation dictates (like the 2009 recession), may be placed in a completely different department (*e.g.*, finance, marketing, or administration) because there are no Yard Manager positions available. *Id.* ¶ 28.

Pat Kocour, the Human Resources Director for the Northern Region, is responsible for interviewing and hiring Training Program applicants from the Northern Region. *Id.* ¶ 5. In late 2006, Kocour interviewed Paulcheck for the Training Program. *Id.* ¶ 9. At the interview, Paulcheck told Kocour that his wife has severe degenerative spinal disease and requires special medical care. *Id.* ¶ 10. Thus, if accepted to the Program, Paulcheck would need to be assigned to a location where his wife could receive the necessary medical treatment. *Id.* Jeff Rafferty, Cameron Scott, and Dan Witthaus also interviewed Paulcheck for a position in the Training Program, but the parties dispute whether these interviews occurred on the same date as the Kocour interview, or after. Pl.'s Resp. DSOF ¶ 9. In any event, Kocour extended Paulcheck an offer to join the Training Program. DSOF ¶¶ 12, 13. Paulcheck accepted

2

the offer, and his title changed from engineer to Transportation Associate. *Id.* ¶ 14. Union Pacific sometimes refers to Transportation Associates as "operations management trainees" or "OMTs." R. 81-11, Pl.'s Exh. JJ (Burchfield Dep. 9:18-20). The Court will use the term Transportation Associate to refer to Paulcheck's position during and after his participation in the Training Program.

In January 2007, Paulcheck reported to Omaha, Nebraska for the Training Program's one-week orientation. DSOF ¶ 15. After orientation, Paulcheck began his field training in North Platte, Nebraska. *Id.* Paulcheck and Kocour discussed the North Platte location at Paulcheck's Training Program interview, and Paulcheck was agreeable to being assigned to North Platte. *Id.* ¶ 11. However, once Paulcheck arrived in North Platte, he discovered that there was not an acceptable physician for his wife within 200 miles of the Union Pacific training site. *Id.* ¶ 17. Paulcheck requested a transfer, and Kocour worked with Human Resources for the Training Program to relocate Paulcheck from North Platte to Council Bluffs, Iowa. *Id.* ¶ 19. Kocour explained to Paulcheck that the move to Council Bluffs would only be temporary because there was no permanent managerial position available in Council Bluffs. *Id.* ¶ 22. In April 2007, Paulcheck moved to Council Bluffs. *Id.* ¶ 21.

Paulcheck completed the Training Program shortly after moving to Council Bluffs, but Union Pacific was not able to immediately place him into a Yard Manager position. *Id.* ¶¶ 29, 30. Thus, Paulcheck continued to work as a Transportation Associate in Council Bluffs, and performed the duties of a Yard Manager. *Id.* ¶ 29. In September or October 2007, Paulcheck called Kocour and expressed his desire to find

a permanent managerial position. *Id.* ¶ 30. Paulcheck told Kocour that if a position did not become available soon, he would consider "going back in the ranks" and return to his position as a locomotive engineer. *Id.* At the time, Paulcheck was renting a house in Council Bluffs and commuting over six hours to see his wife, who still lived at their home in Wonder Lake, Illinois (a town around 60 miles northwest of Chicago). DSOF ¶ 30; R. 70-1, Def.'s App. at 10 (Paulcheck Dep. 38:13-19). Paulcheck's wife stayed in Illinois because Paulcheck's position in Council Bluffs was only temporary, and it was too difficult for her to switch doctors for a short and indeterminate period of time. Paulcheck Dep. 45:10-23. Kocour told Paulcheck that Kocour would work on finding him a new position. DSOF ¶ 30.

In November 2007, Kocour arranged for Paulcheck to transfer to Union Pacific's Commuter Operations department located in Chicago, Illinois. DSOF ¶ 32. Again, this was a temporary position, and Paulcheck continued to work as a Transportation Associate. Paulcheck Dep. 59:4-18. Around this time, Paulcheck submitted a few applications for Manager of Terminal/Train Operations ("Terminal Manager") positions. DSOF ¶¶ 42, 67, 70. These applications will be discussed in greater detail below. For now, it is sufficient to note that Terminal Managers are senior to Yard Managers. *Id.* ¶ 26. According to the Terminal Manager job description, one to two years of experience as a Yard Manager is desired before an employee will be placed in a Terminal Manager position. *See* R. 70-1 (Pl.'s App. at 37). Witnesses for Union Pacific, including Kocour, testified that someone who completes the Training Program must work as a Yard Manager before being promoted to Terminal Manager. DSOF ¶¶

24-25. Paulcheck admits that he was told that Transportation Associates who complete the Training Program progress from being Associates, to Yard Managers, to Terminal Managers, and that an Associate must work as a Yard Manager before being considered for a promotion to Terminal Manager. *Id.* ¶¶ 25-26.

In January 2008, a Yard Manager position became available at Union Pacific's Proviso Yard location in Northlake, Illinois. PSOF ¶¶ 13-14. The superintendent of Proviso Yard, Rod Richardson, interviewed Paulcheck for the position. DSOF ¶ 33. Paulcheck was offered the Yard Manager position. *Id.* ¶ 34. After receiving the job offer, Paulcheck called Kocour and told her that he was concerned that the commute was too long. *Id.* Paulcheck, who had moved back into his home in Wonder Lake, would have to travel one hour and forty-five minutes each way to get to and from Proviso Yard. *Id.* Kocour looked into whether Paulcheck qualified for a relocation package, but Paulcheck did not. *Id.* ¶¶ 35-36. In February 2008, Arnold Robinson, the Superintendent of Commuter Operations, called Paulcheck and told him that he must either accept the Yard Manager position at Proviso Yard, or exercise his seniority and return to his position as a locomotive engineer. *Id.* ¶ 37. Robinson explained that this was a directive from the Vice President of the Northern Region, Randy Blackburn. *Id.*; Def.'s App. at 75. After conferring with his wife, Paulcheck decided not to accept the Yard Manager position because the commute was too long. DSOF ¶ 38. Paulcheck returned to his position as a locomotive engineer. *Id.* ¶ 39.

In August 2008, Paulcheck filed a charge of age discrimination with the United States Equal Employment Opportunity Commission through the Illinois Department

of Human Rights. R. 62 (Compl.) ¶ 9. The charge alleged that Union Pacific discriminated against Paulcheck when it failed to promote him to any of the managerial positions he applied for during and after his participation in the Training Program. R. 62-2, Pl.'s Exh. A attached to Compl. (EEOC Charge). In April 2009, the EEOC issued a right-to-sue letter to Paulcheck, and this action was filed within 90 days of receiving the notice. Compl. ¶ 11.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent. Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). The evidence presented at this stage must comport with the Federal Rules of Evidence and be admissible at trial, *United States v. 5443 Suffield Terrance, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010), or it must consist of affidavits or declarations "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The court does not assess the credibility of witnesses or weigh evidence, *Abdullahi v. City of Madison*, 423

F.3d 763, 773 (7th Cir. 2005), and will not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.

The Age Discrimination in Employment Act (ADEA) prohibits employers from discriminating against workers who are 40 or older on the basis of their age. 29 U.S.C. § 623(a)(1), 631(a). An employee suing under the ADEA may show discrimination directly or indirectly. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). Paulcheck proceeds under the indirect method, and the familiar *McDonnell Douglas* burden shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973). In this case, Paulcheck alleges that Union Pacific's failure to promote him to five available managerial positions was discriminatory in nature. To establish a prima facie case of age discrimination for failure to promote, Paulcheck must prove that (1) he was 40 years old or older; (2) he was qualified for the position; (3) he was rejected for the position sought; and (4) the position was granted to a person outside the protected class who is similarly or less qualified than Paulcheck. *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005). If a prima facie case is established, the burden shifts to Union Pacific to provide a legitimate, non-discriminatory reason for the adverse employment action. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641-42 (7th Cir. 2008). If Union Pacific rebuts the prima facie case, the burden shifts back to Paulcheck to show that Union Pacific's proffered reasons are mere pretext for discrimination. *Id.* at 642.

## A.

### 1.

Paulcheck applied for three Terminal Manager positions at Union Pacific. DSOF ¶¶ 42, 47, 70. The first position was in Fort Worth, Texas, which is located in Union Pacific's Southern Region. *Id.* ¶ 67. The Terminal Manager position was posted in October 2007. *Id.* Edward Adelman, the Director of Terminal Operations for the Southern Region at the time, was the decisionmaker responsible for selecting who to hire as Terminal Manager. *Id.* ¶ 68; Def.'s App. at 122. Adelman hired Lee Ware (who was 47 years old) for the position. DSOF ¶ 69.

Paulcheck fails to establish a prima facie case of age discrimination with respect to this position. First, Ware is not outside of the protected class. He is over 40 years old and, at 47 years old, was not "substantially younger" than Paulcheck, who was 55 at the time he applied for the Terminal Manager position in Fort Worth. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321-22 (7th Cir. 2003) ("The Seventh Circuit has defined 'substantially younger' as generally ten years younger."). Paulcheck also fails to demonstrate that Ware was similarly or less qualified than Paulcheck. In his affidavit, Adelman states that he hired Ware because he had been working as Yard Manager in Forth Worth since late 2005. DSOF ¶ 69. Adelman believed Ware was an excellent candidate based on Adelman's personal experience working with Ware while Ware was both a trainee in the Training Program, as well as a Yard Manager. *Id.* In contrast, Paulcheck's application for the Terminal Manager position revealed that Paulcheck did not have experience working as a Yard

Manager or as any other type of transportation manager. *Id.* ¶ 71. Paulcheck had just recently graduated from the Training Program at the time he applied for this Terminal Manager position. For these reasons, Adelman decided not to interview Paulcheck for the Terminal Manager position and instead hired Ware, who had more experience. *Id.* Paulcheck does not address Adelman's decision to promote Ware in his response brief or statement of additional facts. *See* R. 81; R. 82. Paulcheck cannot make a prima facie showing that Union Pacific's failure to promote him to the Forth Worth Terminal Manager position was discriminatory, and Union Pacific is entitled to summary judgment on this claim.

### 2.

Next, Paulcheck claims that he was wrongfully denied a promotion to a Terminal Manager position in Chester, Illinois. Compl. ¶ 26(c). Paulcheck submitted an application for this position in November 2007. DSOF ¶ 42. The job description for the Terminal Manager position states that it is desirable for the applicant to have one to two years of experience working as a Yard Manager. *Id.* ¶ 43. Prior experience as a Yard Manager is one of eight things listed under the "desired experience" section of the Terminal Manager job description. *See* Def.'s App. at 30. For instance, it is also preferred that the applicant has proficiently worked in transportation field operations for four to eight years. *Id.* At least two years of engineering experience is also desired. *Id.*

Jason Young (who was 39 years old) was selected to fill the Terminal Manager position in Chester. DSOF ¶ 45; Def.'s App. at 83. Young graduated from the Training

Program and worked as Yard Manager for two years before being promoted to Terminal Manager in 2007. DSOF ¶ 46. Again, Paulcheck is unable to establish the fourth prong of his prima facie case: that the position was granted to someone outside of the protected class who was similarly or less qualified than Paulcheck. Here, it is undisputed that Young had two years of experience working as a Yard Manager, whereas Paulcheck did not. *Id.*

Paulcheck emphasizes that, for about one year, he performed the duties of a Yard Manager while still in the Training Program. Pl.'s Resp. DSOF ¶ 44; Def.'s App. at 14 (Paulcheck Dep. 59:4-18). Paulcheck also points to his thirty-one years of experience in transportation field operations, knowledge of operations and pay agreements, and experience as a Supervisor of Yard Operations (SYO). PSOF ¶¶ 32-33. Although these experiences are listed as "desired experiences" in the Chester job posting, Paulcheck fails to establish that having these experiences make him as qualified or more qualified than Young for the Terminal Manager position. In other words, Paulcheck is essentially asking the Court to conclude that certain "desired" qualifications are required or more important than others. But there are no facts in the record that support such an inference. Instead, it was entirely reasonable for Union Pacific to have exercised its discretion when choosing between two candidates who both possess some, but not all, of the "desired" qualifications. "What the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with. We do not tell employers what the requirements for a job must be." *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 621 (7th Cir. 2001) (quoting

*Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 765 (7th Cir. 2001)). The Court concludes that Paulcheck has not satisfied his prima facie case with respect to Union Pacific's decision not to hire him as a Terminal Manager in Chester, Illinois.

**3.**

Paulcheck next complains that he should have been hired for a Denver, Colorado opening. In January 2008, Paulcheck called Matt Stoolman, the Director of Transportation in Denver, to inquire about a Terminal Manager vacancy that had been posted online. DSOF ¶¶ 47-48. Paulcheck expressed his interest in the position, and Stoolman responded that he thought that Paulcheck was already "spoken for" in Commuter Operations, the department in Chicago where Paulcheck was assigned in late 2007. *Id.* ¶¶ 48-49. Paulcheck explained that his assignment to Commuter Operations was only temporary, and that Paulcheck was still looking for a permanent position. Def.'s App at 20 (Paulcheck Dep. 91:2-6). A day or two after the call with Stoolman, Paulcheck submitted an application for the Terminal Manager position in Denver. *Id.* 90:14-21. Paulcheck then had a second conversation with Stoolman about the Terminal Manager position. DSOF ¶ 50. Stoolman told Paulcheck that, although he was pleased with Paulcheck's application, Stoolman was leaning towards hiring another candidate. *Id.* Stoolman explained that it was likely that the other candidate would "get the nod because he was in the area already [and] there would be no relocation package." *Id.*

Ultimately, Carl Garrison (who was 25 years old) was hired for the Terminal Manager position in Denver. DSOF ¶ 51; Def.'s App. at 83. Before being promoted to

Terminal Manager, Garrison had worked as a Yard Manager in Denver for about eleven months. DSOF ¶ 52. Thus, as with the other Terminal Manager positions in Fort Worth and Chester, Union Pacific promoted a candidate who had prior experience working as a Yard Manager. Paulcheck believes that his many years of engineering and other railroad experience make him more qualified for the Terminal Manager position, but he fails to offer any evidence that Union Pacific values these experiences more than an applicant's experience as a Yard Manager. Again, Paulcheck's prima facie case fails at the fourth element, as he is unable to raise a genuine issue of material fact with respect to whether Garrison was similarly or more qualified than him for the Denver Terminal Manager position.

## B.

Also in January 2008, Paulcheck applied for a Manager of Operating Practices ("Operating Manager") position in Denver, Colorado. DSOF ¶ 54. He discussed his chances of obtaining this position with Matt Stoolman (Director of Transportation). *Id.* ¶ 55. According to Paulcheck, Stoolman told him that he felt that Paulcheck was one of the leading candidates for the Operating Manager position, but that Randy Blackburn (VP of the Northern Region) stated that Paulcheck would not be hired because he already "went through all this training," *id.*, a reference to the career path that Training Program alums were expected to follow (a path which did not include Operating Manager). To qualify for an Operating Manager position, an employee does *not* have to participate in the company's Training Program. DSOF ¶ 58. Thus, in Union Pacific's Northern Region, everyone who was promoted to Operating Manager had *not*

participated in the Program. *Id.* Unlike the Denver job posting for the Terminal Manager position, the posting for Operating Manager does not list "management training program" experience as one of the "special training, skills, or education" needed to apply for the position. *See* Def.'s App. at 37, 47.

James Ten Kate (who was 35 years old) was selected to fill the Operating Manager position in Denver. DSOF ¶ 61; Def.'s App. at 83. Kate never participated in the Training Program. DSOF ¶ 61. Paulcheck does not address the Training Program issue in his response brief. Paulcheck simply claims that he is qualified to hold the position of Operating Manager, and cites the deposition testimony of Pat Kocour (HR Director for the Northern Region). PSOF ¶ 27. But Kocour testified that she was not aware that Paulcheck applied for any managerial position, let alone the Operating Manager position in Denver. R. 81, Pl.'s Exh. B (Kocour Dep. 96:20-24). Kocour did not interview or select candidates for managerial positions. *Id.* 92:12-18. This task is left to the hiring managers. *Id.* 92:19-93:5. Thus, the fact that Kocour testified that she "would imagine" that Paulcheck's background as an engineer would make him qualified for an Operating Manager position does not create a genuine issue of material fact with respect to whether Paulcheck was actually qualified for the position, or similarly or more qualified than Kate. *Id.* 118:14-20. Paulcheck cannot establish a prima facie case of age discrimination with respect to the Operating Manager promotion.

**C.**

Paulcheck's final failure-to-promote claim relates to a Yard Manager position that was filled by one of Paulcheck's classmates in the Training Program, Lindsay Paris. DSOF ¶ 62. Like Paulcheck, Paris was hired into the Program as a Transportation Associate. *Id.* At the time Paris joined the Training Program, she lived in Ames, Iowa. *Id.* ¶ 63. After successfully completing the Program, Paris (who was 24 years old) was promoted to a Yard Manager position in Boone, Iowa. *Id.* The Yard Manager position in Boone was never posted, and Paulcheck never applied for the position. *Id.* ¶ 66. In fact, Paris was the only candidate considered for the Boone Yard Manager position. *Id.* ¶ 65. Karol Burchfield, the General Superintendent of Transportation Services for the Service Unit in Council Bluffs, Iowa, made the decision to promote Paris to the Yard Manager position in Boone. *Id.* ¶ 64; Def.'s App. at 119. Burchfield selected Paris for the position because she "was a qualified candidate who was currently living on that territory and thus, did not require relocation." Def.'s App. at 119 (Burchfield Aff. ¶ 3). No one else was considered for the Yard Manager position because no other qualified candidates lived on that territory. *Id.*

Paulcheck argues that he "should have been offered the position" because "[h]e had more experience . . . [and] greater qualifications" than Paris. Pl.'s Br. at 12. Paulcheck's position is flawed for the same reasons already discussed in the contexts of the other four promotions: Paulcheck fails to identify any facts in the record that show that his prior railroad and engineering experience, while "desired," actually makes him more qualified than other candidates who have completed the Training Program and/or have experience as Yard Managers. This situation is different,

14

however, from the other claims because Paulcheck and Paris were members of the same Training Program, and were both eligible for a promotion to Yard Manager. Construing the facts in the light most favorable to Paulcheck, he has established that, at a minimum, he and Paris were "similarly" qualified for the Yard Manager position. Because the promotion went to Paris, who is well outside of the protected class, Paulcheck meets the fourth prong of his prima facie case.

Union Pacific argues that Paulcheck's prima facie case still must fail because he did not apply for the Yard Manager position. Def.'s Reply at 12. In the failure-to-promote context, the Seventh Circuit has defined the second prong of the prima facie case as "[the plaintiff ]applied for, and was qualified for an open position." *Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1005-06 (7th Cir. 2000); *see also Jones v. City of Springfield*, 554 F.3d 669, 673 (7th Cir. 2009); *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003); *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th Cir. 2001). Thus, Union Pacific argues that even if Paulcheck was qualified for the Yard Manager position, he fails to establish that he applied for an open position. However, in this case, Paulcheck did not apply for the position because it was not posted. Pl.'s Resp. DSOF ¶ 66. Paulcheck testified that he learned about the position when Paris called him and told him about it. Def.'s App. at 27 (Paulcheck Dep. 169:6-8). It is undisputed that Paris was the only candidate considered for the promotion. DSOF ¶ 65.

In support of its argument that Paulcheck cannot meet the second prong of his prima facie case, Union Pacific cites *Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d

1002, 1005-06 (7th Cir. 2000) and *Jones v. City of Springfield*, 554 F.3d 669, 673 (7th Cir. 2009). Def.'s Br. at 12-13. Paulcheck's situation, however, is different from those cases. The plaintiffs in *Howard* and *Jones* were unable to show that a promotional opportunity was available. For instance, the plaintiff in *Howard* claimed that she should have been promoted to the position of human resources manager. 234 F.3d at 1003-04. But the plant where she worked never had its own HR manager and the company refused to create such a position. *Id.* at 1006. Similarly, in *Jones*, the plaintiff failed to demonstrate that a vacancy into which he could have been promoted existed, and instead argued that the police department could have promoted him before a vacancy became officially available. 554 F.3d at 670, 673. In both cases, the Seventh Circuit concluded that the plaintiffs could not make a prima facie case of failure to promote because an open position did not exist.

Here, in contrast, the record demonstrates that there *was* an opening for a Yard Manager in Boone, Iowa. DSOF ¶ 63. But Union Pacific filled the position without posting that the position was available. This is similar to the situation in *Lust v. Sealy*, where the employer selected an employee for a promotion without posting that the position was open, taking applications, or conducting interviews. 243 F. Supp. 2d 908, 915 (W.D. Wis. 2002). The district court concluded that, under the circumstances, the plaintiff satisfied the second prong of her prima facie case because "[i]t would be reasonable to infer . . . that plaintiff would have accepted the position if defendant had offered it to her." *Id.* The plaintiff in *Lust* specifically told her supervisor that she was interested in the position and was willing to relocate. *Id.* Here, there is nothing in the

record demonstrating that Paulcheck told anyone that he was specifically interested in the Yard Manager position in Boone. However, Paulcheck and Paris attended the Training Program together, and Union Pacific has repeatedly emphasized that the next step for all Transportation Associates, or "trainees," is to find a position as a Yard Manager. Paulcheck was working in Council Bluffs, Iowa when Paris was promoted to the Yard Manager position. This fact, along with the fact that Paulcheck submitted applications for managerial positions all over the country, permits the reasonable inference that Paulcheck would have accepted the Yard Manager position in Boone if it had been offered to him. Therefore, the Court concludes that Paulcheck's failure to formally apply for the Yard Manager position does not preclude him from establishing a prima facie case of age discrimination. *See Hobbs v. City of Chicago*, 573 F.3d 454, 461 (7th Cir. 2009) ("if an employer disregards an application process, the employer cannot defeat a plaintiff's prima facie case by arguing that the plaintiff did not apply for a position") (*citing Loyd v. Phillips Bros.*, 25 F.3d 518, 523 (7th Cir. 1994)); *see also Hausz v. Sunrise Chevrolet*, 2003 WL 22849162, at *8 (N.D. Ill. Dec. 1, 2003) (in the failure-to-promote context, "it may be proper to excuse the need for a formal application in certain circumstances").

The burden shifts to Union Pacific to provide a legitimate, non-discriminatory reason for failing to promote Paulcheck to the Yard Manager position. Union Pacific states that it promoted Paris to the Yard Manager position because she already lived on the territory and did not require relocation. Def.'s Br. at 13. This proffer shifts the burden back to Paulcheck, who must now demonstrate that Union Pacific's reason is

pretextual, or "a lie." *Hobbs*, 573 F.3d at 461; *see also Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("Pretext is more than a mistake on the part of the employer; it is a phony excuse."). "Showing pretext requires proof that the defendant's explanation is unworthy of credence." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (quotations omitted).

Paulcheck argues that Union Pacific's decision to promote Paris based on location is pretextual because Pat Kocour (HR Director for the Northern Region) testified that relocation expenses should not be considered when placing employees who have successfully completed the Training Program. Pl.'s Br. at 12. First, Paulcheck's paraphrase does not accurately depict Kocour's deposition testimony.[2] Second, and more importantly, Kocour was not the person who decided to promote Paris – Karolyn Burchfield was. DSOF ¶ 64. Paulcheck does not present any evidence that potential relocation expenses was actually not one of the criteria Burchfield considered when deciding who to hire for the Yard Manager position. Burchfield testified that she believes it was a "reasonable management decision" to select a Transportation Associate who is already working at the location of the job opening to fill the vacancy. Pl.'s Exh. JJ (Burchfield Dep. 11:7-20). Paulcheck fails to identify any evidence that raises a genuine issue as to whether Burchfield's proffered reason for promoting Paris was dishonest. Thus, Paulcheck cannot show pretext, and Union

---

[2]Kocour testified that hiring managers who interview candidates that have completed the Training Program do not condition job offers upon a candidate's agreement to forgo his relocation costs. Pl.'s Exh. B (Kocour Dep. 46:22-47:4).

Pacific's motion for summary judgment on Paulcheck's claim of failure to promote to the Yard Manager position will be granted.

## D.

To summarize, Paulcheck fails to establish a prima facie case of age discrimination with respect to the three Terminal Manager positions and the Operating Manager position. Paulcheck made out a prima facie case with respect to the Yard Manager position, but failed to demonstrate that Union Pacific's reasons for not hiring Paulcheck were pretext for age discrimination. The same is true for the Terminal Manager and Operating Manager positions. In other words, even if Paulcheck were able to establish a prima facie case of discrimination for any of the Terminal Manager and Operating Manager positions, Paulcheck's claims would still fail. Union Pacific has articulated legitimate, non-discriminatory reasons for each of its hiring decisions, and Paulcheck is unable to show that any of these reasons are pretext for discrimination.

Specifically, according to Union Pacific, Paulcheck was not promoted to any of the three Terminal Manager positions he applied for because he lacked experience as a Yard Manager. Def.'s Br. at 9-10. The candidates hired for the Terminal Manager positions – Ware, Young, and Garrison – all had prior experience as Yard Managers. Paulcheck argues that Union Pacific's reason for failing to promote Paulcheck is pretextual because a Transportation Associate does not need to be a Yard Manager before becoming a Terminal Manager. Pl.'s Br. at 9, 13, 15. Paulcheck claims that this

is evidenced by the fact that Benjamin Gaddy went from being a Transportation Associate in 2005, to a Terminal Manager in 2006. PSOF ¶ 39.

Looking at Gaddy's employment record, he was a Transportation Associate in the Human Resources department from April 2005 through October 2005. R. 81, Pl.'s Exh. W. According to Lydia White,[3] HR pays a Transportation Associate's salary while he is enrolled in the Training Program. Pl.'s Exh. C (White Dep. 39:5-8). White testified that an individual typically remains on the HR budget until he is promoted into a Yard Manager position.[4] Pl.'s Exh. C (White Dep. 39:5-15). For instance, it is undisputed that Paulcheck was never promoted to a Yard Manager position, but his employment record shows that his title changed to Yard Manager in July 2007and he remained on the HR budget. Pl.'s Exh. G. In contrast, records for employees that actually received promotions to Yard Manager, *e.g.*, Lee Ware, show that the employee went from being a Yard Manager on the HR budget to a Yard Manager assigned to a particular region. Pl.'s Exh. S. In Ware's case, he moved from the HR department to the Southern Region, while retaining the title of Yard Manager. *Id.*

Turning back to Gaddy, the employment record shows that Gaddy's title changed from Transportation Associate to Yard Manager in November 2005. Pl.'s Exh. W. Gaddy remained on the HR department's budget until May 2006, when he became a

---

[3]The parties never identify Ms. White's job title. It appears that she holds a position with the Training Program. *See* PSOF ¶ 7.

[4]Pat Kocour (HR Director for the Northern Region) similarly explained that a Yard Manager "under the human resources department" indicates that the employee "was never assigned a permanent position by the Northern Region." Pl.'s Exh. B (Kocour Dep. 50:24-51:13).

Yard Manager in the Southern Region. In August 2006, Gaddy was promoted to Terminal Manager. Thus, it appears that Gaddy held the position of Yard Manager in the Southern Region, before receiving the Terminal Manager promotion. Paulcheck may take issue with the length of time that Gaddy worked as an "official" Yard Manager (about 4 months), but he does not develop this argument any further in his brief. Union Pacific has submitted a declaration from Gaddy stating that he worked as a Yard Manager from November 2005 until August 2006. Def.'s App. at 72. In any event, even if Paulcheck had demonstrated that Gaddy received a direct promotion from Transportation Associate to Terminal Manager in 2006, it would not be enough call into question Union Pacific's legitimate reason for choosing to promote Ware, Young, and Garrison instead of Paulcheck in 2007-2008.

Union Pacific did not select Paulcheck for the Operating Manager position in Denver because Paulcheck had completed the company's Training Program. Paulcheck argues that this reason is not worthy of belief because it is "nonsensical" to disqualify applicants for this position "simply because they went through additional training as managers." Pl.'s Resp. DSOF ¶ 57. Paulcheck points to evidence showing that not every individual who completes the Training Program is placed as a Yard Manager. Pl.'s Br. at 2-3. Paulcheck identifies five trainees who went from the Training Program to other departments, including Resource Planning, Marketing and Sales, and Safety. *Id*. However, this is not evidence related to whether the decisionmakers at Union Pacific honestly selected Kate for the promotion because he had not completed the Training Program. Paulcheck fails to produce any evidence that Union Pacific's proffered reason

is dishonest, or that age had anything to do with its decision not to promote Paulcheck to the Operating Manager position.

In short, Paulcheck has failed to carry his burden of showing that he was not selected for any of the five managerial positions because of his age. Paulcheck was 54 years old when he applied for a position in the Operations Management Training Program. As Union Pacific points out, it would make little sense to accept Paulcheck into the Training Program and devote resources to training him for several months, just to turn around and deny him managerial positions based on his age. Def.'s Reply at 13-14. When Paulcheck discovered that his initial training assignment in North Platte was not suitable for his wife, Union Pacific accommodated Paulcheck's request to be transferred to a location that had adequate medical facilities. After Paulcheck completed the Training Program, Union Pacific offered him a position as a Yard Manager in Northlake, Illinois, which he turned down.

Although Paulcheck may not agree with Union Pacific's business decisions, this does not create a genuine issue of pretext. Accordingly, the Court concludes that Paulcheck's claim of age discrimination fails as a matter of law.

## IV.

For the reasons stated above, Union Pacific's motion for summary judgment [R. 68] is granted.

ENTERED:

_____/s/ Edmond E. Chang_____
Honorable Edmond E. Chang

DATE: November 22, 2011